**SIGNED this 22nd day of March, 2011.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE<br><br>MICHAEL J. RHINESMITH & COLLEEN K. RHINESMITH<br><br>DEBTORS | BANKR. CASE NO.<br><br>10-51912-C<br><br>CHAPTER 7 |
| RANDOLPH N. OSHEROW, AS TRUSTEE FOR THE BANKRUPTCY ESTATE OF MICHAEL J. RHINESMITH AND COLLEEN K. RHINESMITH, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>PLAINTIFF<br><br>V.<br><br>WELLS FARGO HOME MORTGAGE, INC.<br><br>DEFENDANT | <br><br><br><br><br><br>ADV. NO. 10-5125 |

**DECISION AND ORDER ON MOTION TO DISMISS**

Came on for consideration the motion of defendant to dismiss for failure to state a claim, for lack of personal jurisdiction and for lack of subject matter jurisdiction. Other issues are also raised in the motion. For the reasons set out herein, the court rules that

the motion to dismiss for lack of subject matter jurisdiction -- to wit, standing -- must be granted. The court does not need to reach the remaining issues raised in the motion.

## Background

The relevant background facts are found in Wells Fargo's motion and include the following: On May 18, 2010, Michael J. Rhinesmith and Colleen K. Rhinesmith (the "Debtors") filed for relief under Chapter 7 of the Bankruptcy Code. On November 16, 2010, Randolph N. Osherow, in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Michael J. Rhinesmith and Colleen K. Rhinesmith and on behalf of all others similarly situated (the "Plaintiff"), filed this Complaint against WFHM ["Wells Fargo"], seeking damages for alleged breaches of the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 *et seq.*, and seeking damages, temporary and permanent injunctive relief for alleged breaches of the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code §392.0011 *et seq*.

On April 11, 2006, the Debtors entered into a Fixed Rate Note (the "Note") by and between Michael and Colleen Rhinesmith and Wells Fargo Bank, N.A. in the principal amount of $17,000.00. The Note is scheduled to mature on April 11, 2016. On the same date, the Debtors executed a Deed of Trust (the "Deed of Trust") in favor of Wells Fargo Bank, N.A., wherein the Debtors granted a security interest in real property located at 105 Alambre Drive, Del Rio, Texas 78840. The loan in question was, under Texas law, a home equity loan.

In connection with their Chapter 7 petition, the Debtors executed their statement of intentions, indicating an intent to reaffirm with Wells Fargo. Prior to the Debtors' receiving their discharge, Wells Fargo and the Debtors entered into a reaffirmation

agreement affecting the home equity loan, which was signed by the Debtors on July 28, 2010 and by their counsel on August 2, 2010 ("Reaffirmation Agreement"). As set forth on page 6 of the Reaffirmation Agreement, none of the loan's repayment terms were altered or amended. The Reaffirmation Agreement was filed with the court on August 17, 2010 [Docket No. 12], but was denied by the court on August 30, 2010 [Docket No. 14]. The Reaffirmation Agreement was not final. The court's August 30, 2010 Order expressly authorized Wells Fargo to enforce the Debtors' in rem obligations. On August 31, 2010, the debtor received a discharge and the case was closes on September 1, 2010.

## Analysis

The issue of the trustee's standing must be addressed out the outset. Standing is a species of subject matter jurisdiction, in that, if a party lacks standing, the court lacks subject matter to hear the matter, and it must be dismissed. *See Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009); *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (noting that "standing and ripeness are essential elements of federal subject-matter jurisdiction").

Wells Fargo maintains that the trustee lacks standing to bring this suit because the debtors' cause of action arose post-petition (based on Wells Fargo's post-petition conduct in connection with the reaffirmation agreements it sent to debtors) and thus does not constitute property of the estate. The trustee responded by pointing to section 541(a)(7) of the Bankruptcy Code, which provides that property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). The trustee's argument simply assumes, without any discussion

of the issue, that the debtors' FDCPA and TDCA claims were acquired by the estate such that they should be considered after-acquired property of the estate under section 541(a)(7). However, "[a]fter the commencement of [a chapter 7 bankruptcy] case, the bankruptcy estate has an existence that is completely separate from that of the debtor, and section 541(a)(7) covers only property that the *estate itself* acquires after the commencement of the bankruptcy proceeding." *Wade v. Bailey (In re Wade)*, 287 B.R. 874, 881 (S.D. Miss. 2001) (emphasis added); *see also In re Evans*, 337 B.R. 551, 557 (Bankr. E.D.N.C. 2005) (stating, in the context of a chapter 11 case, that "the precise issue under § 541(a)(7) is whether the property interest in question can be 'properly classified as a property interest generated by the estate enterprise'") (quoting *Reed v. Yochem*, 184 B.R. 733, 739 (Bankr. W.D. Tex. 1995)). Thus, the issue is whether the debtors' cause of action against Wells Fargo can be considered to have been acquired by the estate rather than the individual debtors. If it is not, then the trustee cannot have standing because the cause of action would not belong to the estate. In other words, the trustee's standing is limited to the estate which the trustee is by law authorized to administer. Causes of action which are not property of the estate are not the trustee's to administer, and the trustee would thus lack standing to pursue them. *See Lexxus Int'l, Inc. v. Loghry*, 512 F.Supp.2d 647, 658 (N.D.Tex. 2007), citing *Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) (trustee is real party in interest with exclusive standing to pursue *prepetition* claims on the estate's behalf).

The conduct giving rise to the debtors' cause of action occurred post-petition. "Unlike pre-petition claims, claims which accrue to the debtor post-petition generally will not adhere to the estate, and remain actionable by the debtor." *Stanley v. Comm. Bank,*

*N.A.*, 2009 U.S. Dist. LEXIS 8022, at *6-7 (N.D.N.Y. Feb. 4, 2009); *see also Bell v. Bell (In re Bell)*, 225 F.3d 203, 215 (2d Cir. 2008) (stating that "property of the estate is distinct from the property of the debtor. Property acquired by the estate after the commencement of the case, *see* 11 U.S.C. § 541(a)(7) …, is property of the estate. But property acquired post-petition by the debtor does not enter the estate; it remains the separate property of the debtor").

There is an exception to this general rule when "the operative events for a cause of action straddle the petition date." *In re Patterson*, 2008 Bankr. LEXIS 1778, at *9 (Bankr. N.D. Ohio June 3, 2008). Courts take one of two approaches in such situations. Some courts look to the accrual date of the lawsuit to determine whether a cause of action constitutes property of the estate. *Id.* at *10. Under that approach, "a cause of action will only inure to the benefit of the trustee if, at the commencement of the case, the debtor could have brought the claim under applicable state law." *Id.* (citing cases). This approach would prevent the trustee from being able to successfully argue that the present debtors' FDCPA and TDCA claims belong to the estate. These claims did not exist when the debtors filed their chapter 7 petition, so they could not have been brought at that time.

Other courts take a less restrictive approach to examining whether post-petition causes of action constitute property of the estate. These courts will find a cause of action to be property of the estate if "the events giving rise to the claim are sufficiently

rooted in the pre-bankruptcy past." *Id.* at *12 (citing cases).[1] This test is no longer applicable in the Fifth Circuit, after the *en banc* decision in *In re Burgess,* 438 F.3d 493, 498 (5th Cir. 2006) (Bankruptcy Code superseded the "sufficiently rooted" test in *Segal v. Rochelle*). *See* discussion *supra* at note 1. Even under this more lenient approach, however, the trustee's (un-argued) argument fails. In *O'Dowd v. Trueger (In re O'Dowd)*, 233 F.3d 197, 199-200 (3d Cir. 2000), the debtor wished to bring a malpractice action against her former attorneys in connection with their handling (or mishandling) of another, prior malpractice action that the debtor had possessed at the

---

[1] This court does not endorse the continuing facile references in the case law to the "sufficiently rooted in the bankruptcy past" language from *Segal v. Rochelle,* 382 U.S. 375 (1966) as a litmus test for what is and is not property of the estate under the Bankruptcy Code. Indeed, this court has gone to some pains to explain why continued reliance on this test is misplaced, especially in light of the Fifth Circuit's decision in *In re Burgess*. *See In re Donnell*, 357 B.R. 386, 391 & n. 6 (Bankr. W.D.Tex. 2006), discussing *In re Burgess*, 438 F.3d 493, 498 (5th Cir. 2006). To reiterate what was stated there:

> The court [in *Burgess*] held that, with the enactment of an explicit statutory definition for "property of the estate" in the Bankruptcy Reform Act of 1978, "*Segal's* 'sufficiently rooted' test did not survive the enactment of the Bankruptcy Code." Burgess v. Sikes (In re Burgess), 438 F.3d 493, 498 (5th Cir. 2006) (en banc). This conclusion is consistent with the actual holding in *Barowsky*, though it more explicitly (and correctly) rejects the notion that "sufficiently rooted in the pre-bankruptcy past" describes the scope of the estate's interest in property. ... The language was employed by the Supreme Court in *Segal* to determine whether the debtor's "fresh start" would be impaired were the property in question incorporated into the estate. This was a live issue under the Act. Because any alienable or leviable property could become property of the estate, a debtor's future wages in perpetuity could conceivably be swept up -- because many states in 1966 permitted full wage garnishment, a species of alienation or levy. By limiting the reach of property to that "sufficiently rooted in the pre-bankruptcy past," the debtor's future wages (which are, by definition, not "rooted in the pre-bankruptcy past" of the debtor) would thereby be insulated from estate administration. The Bankruptcy Code has no need for this limitation. Instead, the statute itself *de facto* excludes certain assets from inclusion in the estate, first by changing the reach of estate property from "any alienable or leviable property" (the scope under the Act, according to *Segal*) to "all legal or equitable interests in property as of the commencement of the case" (the scope under the Code). Secondly, section 541 itself contains specific statutory exclusions from the reach of section 541(a)(1), including the "except" clause in section 541(a)(6) for post-petition earnings, and the various exclusions in section 541(b). This is what the Fifth Circuit meant when it ruled that *Segal's* "sufficiently rooted" test did not survive the enactment of the Code.

*Id.*

time she filed for bankruptcy. The debtor did not dispute that the first malpractice action was property of the bankruptcy estate. *Id.* at 200. She did, however, assert that the second malpractice action, which had not accrued (under state law) until 4 years after she had filed her original bankruptcy petition, did not constitute property of the estate. *Id.* at *202-03. The Third Circuit, affirming the decision of the bankruptcy court, disagreed. The bankruptcy court had "held that the malpractice claims were sufficiently rooted in [the debtor's] past to be considered property of the estate pursuant to 11 U.S.C. § 541(a)(1)." *Id.* at 201. Alternatively, the bankruptcy court had concluded that the claims also constituted property of the estate under section 541(a)(7). *Id.* The Third Circuit affirmed based on the bankruptcy court's finding that the second malpractice action constituted property of the estate under section 541(a)(7). *Id.* at 201 n. 6. The Third Circuit reasoned that, although the second malpractice action had not come into existence until four years after the debtor had filed her bankruptcy petition, the *claims* in that malpractice case "could be traced directly to" the first malpractice action, which was property of the estate. *Id.* at 203. The court stated,

> [t]he injury alleged in the [second malpractice action] is that [the debtor] suffered a diminished recovery in the [first malpractice action] as result [sic] of her former attorney's negligence. Put differently, the misconduct of [the debtor's] former bankruptcy attorneys reduced the value of her malpractice lawsuit against [the attorney defendant in the first malpractice suit]. While we acknowledge that the conduct giving rise to the malpractice claim occurred post-petition, we find it conceptually impossible to sever the [second malpractice action] from the underlying [prior malpractice action].

*Id.* The Third Circuit further supported its conclusion by noting that, contrary to the cases that had found post-petition causes of action to constitute property of the debtor as opposed to property of the estate, here, only the estate would be affected by any

alleged malpractice on the part of the second set of attorneys in connection with the first malpractice case because such malpractice would have reduced the value of the first malpractice case. In other words, the debtor, personally, would not suffer any harm (because the diminution of the value of the first lawsuit would affect only the estate that now owned that cause of action, and not the debtor, who no longer owned that cause of action). *Id.* at 204. Concluded the Third Circuit, "because the [first malpractice action] belonged to the estate, including the claims that could have been but were not asserted, a malpractice suit [the second malpractice suit] in connection with those omitted claims likewise belongs to the estate and the estate's creditors." *Id.*

Similarly, in *Stanley v. Comm. Bank, N.A.*, 2009 U.S. Dist. LEXIS 8022, at *1-2 (N.D.N.Y. 2009), the debtor sought to bring various claims against various defendants in connection with their involvement in the debtor's husband's fraudulent procurement of loans in her name. The defendants argued that the debtor lacked standing to bring these claims as they constituted property of the bankruptcy estate. *Id.* The District Court for the Northern District of New York agreed with the defendants, stating that "it is clear that [the debtor's] claims against [the defendants] are property of the bankruptcy estate, regardless of whether such claims accrued pre- or post-petition." Id. at *7-8. The court found that

> [t]he claims against these defendants arise solely out of their alleged complicity in [the debtor's husband's] fraudulent conduct[,] … [which] acts and omissions occurred well before [the debtor] filed her bankruptcy petition in February of 2006. Thus, claims stemming from such events are clearly 'rooted in [the debtor's] pre-bankruptcy past.'

*Id.* at *8.

Here, no such argument can be made. All of the conduct at issue arose post-petition, and has no "roots" in pre-bankruptcy conduct. Accordingly, the FDCPA and TDCA claims belong to the debtors and not the bankruptcy estate. *See Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1042-44 (11th Cir. 2004) (stating that "[p]re-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not[,]" and concluding that because the debtor's legal malpractice cause of action did not exist, and could not have even been predicted, at the time he filed his bankruptcy petition, that cause of action was not property of his bankruptcy estate); *In re Patterson*, 2008 Bankr. LEXIS 1778, at *8 (Bankr. N.D. Ohio June 3, 2008) (stating that "where all the events giving rise to a cause of action occur following the filing of the petition, the cause of action is not property of the estate"). In *Patterson*, the bankruptcy court for the Northern District of Ohio the chapter 7 debtors sought to bring an action against a pre-petition creditor in connection with that creditor's disclosure of the debtors' medical information when the creditor filed its proof of claim in the debtors' bankruptcy case. *Id*. at *2. The court concluded that the debtors' post-petition cause of action belonged to the debtors. *Id*. at *17. The court first noted that the debtors claims all stemmed "entirely from a single, post-petition event." *Id*. at *13. The court noted that the debtor's injury did have some connections with the debtors' pre-bankruptcy past in that "'but for" the Debtors' bankruptcy, no potential cause of action would exist as the Defendant would not have had occasion to file its proof of claim." *Id*. The court stated,

> merely because a connection can be drawn between a cause of action and a pre-petition event does not mean that the claim has substantial roots in the pre-bankruptcy past. To hold otherwise, and allow, as the Trustee seeks to do, any connection with the pre-bankruptcy past to warrant a claim's inclusion in the estate simply opens the door too wide.

> As with any human affair, all events involving a debtor may be traced to an earlier event. In sum, we are all products of our past.

*Id.* at *16.

In *Wade v. Bailey (In re Bailey)*, 287 B.R. 874, 876 (S.D. Miss. 2001), the court addressed whether a chapter 7 debtor's state law claims brought in connection with a bank's post-petition collection activities constituted property of the estate. It was undisputed that 1) the debtors' petition was filed in July of 1997; 2) the defendants began their collection activities after the petition was filed; 3) the discharge occurred in December of 1997, before reaffirmation was administered; and 4) the debtors' state court action was filed in 1998. *Id.* at 881. The court concluded that the defendants had not shown "how [the debtors'] claims [were] traceable directly to pre-petition conduct." *Id.*; *see also Bobroff v. Continental Bank*, 43 B.R. 746, 750-51 (E.D. Pa. 1984) (finding that a debtor's defamation claims were not property of the estate because the events that gave rise to the claims occurred after the debtor filed for chapter 7); *Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*, 221 B.R. 113, 116-17 (D.N.J. 1998) (finding that debtor's malicious prosecution claim was not property of the estate because it arose post-petition when the indictment was dismissed); *but see Correll v. Equifax Check Services, Inc.*, 234 B.R. 8, 11 (D. Conn. 1997) (cause of action arising from collection letters sent post-petition held to be property of the estate).

Were this a chapter 11 case, the argument could be made that the cause of action might be traceable to or arise out of a pre-petition property interest already included in the estate, under section 541(a)(7), or on grounds that "'[c]auses of action arising after the debtor files for bankruptcy generally become part of the estate.'" *Correll*, 234 B.R. at 10 (citing *Polvay v. B.O. Acquisitions, Inc.*, 1997 U.S. Dist. LEXIS 5877

(S.D.N.Y. Apr. 17, 1997)) (debtor corporation's claims against its shareholders for various pre-petition breaches of fiduciary duty held to be property of the estate); *see also Schepps Food Stores, Inc. v. Shields (In re Schepps Food Stores, Inc.)*, 160 B.R. 792, 795-98 (Bankr. S.D. Tex. 1993) (noting that claims brought by a corporate chapter 11 debtor's shareholders against the corporation's director for breaches of fiduciary duty during the bankruptcy case, being derivative in nature, would constitute property of the estate). The results in *Polvay* and *Schepps* make sense in the context of corporate chapter 11 cases because, regardless of whether the claim "arose" pre- or post-petition, the harm suffered by a corporate debtor due to director or shareholder breaches of fiduciary duty directly impacts the bankruptcy estate. In *Polvay*, the shareholders' alleged misconduct caused the corporation to file for chapter 11. *Id.*, 1997 U.S. Dist. LEXIS 5877, at *2. In *Schepps*, the alleged harm consisted of post-petition misconduct by a corporate director acting on behalf of the debtor-in-possession. *Schepps,* 160 B.R. at 798-99. As such, any harm caused would have been suffered by both the debtor (and its shareholders) and the estate. The chapter 11 context is different from chapter 7 in that, during the pendency of the chapter 11 case, it is difficult if not impossible to separate out actions that involve only the debtor from actions that involve only the estate. *See In re Herberman,* 122 B.R. 273, 280-81 (Bankr. W.D.Tex. 1990).

While it is true that the debtors would have no claim against Wells Fargo "but for" the existence of their bankruptcy case, that alone is insufficient to make their claims property of the estate. Furthermore, just as the creditor's proof of claim in *Patterson*, which was based entirely on pre-petition services rendered, failed to establish the required connection between the debtors' post-petition cause of action and the debtors'

pre-bankruptcy past, Wells Fargo's reaffirmation agreement and subsequent letter, while based on a pre-petition home equity transaction, likewise does not thereby make the cause of action property in which the debtor had a legal or equitable interest as of the commencement of the case. *See In re Burgess*, 438 F.3d 493, 498 (5th Cir. 2006). The debtors' FDCPA and TDCA claims should be treated as claims that arose in the debtors' favor after the case was commenced, and thus cannot be treated as belonging to the bankruptcy estate. *Id.* And if the claims are not estate property, then they cannot be administered by the trustee. *Lexxus Int'l, Inc. v. Loghry*, 512 F.Supp.2d 647, 658 (N.D.Tex. 2007).

As a final note, public policy also supports the conclusion that an individual debtor's post-petition claim arising from post-petition conduct should not be considered property of the estate in chapter 7 cases. An individual debtor's ability to obtain a fresh start could be severely impacted by the inclusion of post-petition claims, resulting from personal harm suffered by the debtor post-petition, in property of the estate. This becomes particularly clear in personal injury cases. S*ee, e.g., In re Doemling*, 127 B.R. 954 (W.D. Pa. 1991) (finding post-petition personal injury claim of individual chapter 11 debtor did not constitute property of the estate); *In re Durrett*, 187 B.R. 413 (Bankr. D.N.H. 1995) (same).

## Conclusion

The court is of course quite sensitive to the potential for abuse when creditors try to convince debtors to execute reaffirmation agreements on home equity loans. But the court cannot ignore the most basic rules of subject matter jurisdiction. Indeed, doing so only imperils the possibility of obtaining an effective solution. If there is a basis for an

action against this, or any other, creditor engaging in the sort of conduct alleged here, then that action must be initiated and pursued by someone with standing. That is not the chapter 7 panel trustee. The motion to dismiss is granted, without prejudice to re-filing by a party with standing.

# # #